UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEWMAN A., <br>    Plaintiff, <br>  v. <br> NANCY A. BERRYHILL, <br>    Defendant. | Case No. 17-cv-03010-JSC <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS** <br><br> Re: Dkt. Nos. 24, 29 |

Plaintiff Newman A. seeks social security benefits for a combination of mental and physical impairments, including: post-traumatic stress disorder, major depressive disorder, prostate cancer and treatment side effects, diabetes, tinnitus, hyperlipidemia, hypertension, bursitis, erectile dysfunction, lower back pain, insomnia, and chronic cystitis. (Administrative Record ("AR") 23.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his benefits claim. Now before the Court are Plaintiff's and Defendant's Motions for Summary Judgment.[1] (Dkt. Nos. 24 & 29.) Because the Administrative Law Judge ("ALJ") legally erred in her treatment of the medical opinion evidence and credibility determination, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings.

## LEGAL STANDARD

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 5 & 8.)

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work'; and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). As explained by the Ninth Circuit, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted). However, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.*

A court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm

2

simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

## PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act (the "Act") on August 31, 2012. (AR 169-75.) Plaintiff alleged disability beginning on October 1, 2007. (*Id.*) His application was denied both initially and upon reconsideration. (AR 20.) Plaintiff then filed a request for hearing before an ALJ. (AR 20.) The ALJ convened a hearing on June 16, 2015. (*Id.*) On August 27, 2015, the ALJ issued a decision finding Plaintiff not disabled. (AR 17-30.) Plaintiff filed a request for review of the ALJ's decision on October 26, 2015. (AR 15.) The Appeals Council denied Plaintiff's request for review on March 21, 2017, and the ALJ's decision became the Commissioner's final decision. (AR 1-3.) Plaintiff commenced this action for judicial review of the Commissioner's decision on May 24, 2017, pursuant to 42 U.S.C. § 405(g).

## ADMINISTRATIVE RECORD

### I. The ALJ's Findings

The ALJ found Plaintiff not disabled under Sections 216(i) and 223(d) of the Social Security Act, taking into consideration the testimony and other evidence, and using the SSA's five-step sequential evaluation process for determining disability. (AR 20-30.); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from October 1, 2007 through his date last insured on December 31, 2012. (AR 23.)

At step two, the ALJ determined that Plaintiff's post-traumatic stress disorder (PTSD) and major depressive disorder were severe impairments. (*Id.*) The ALJ further found that Plaintiff had the following non-severe impairments: prostate cancer (remission) and the side effects of the cancer, diabetes, tinnitus, hyperlipidemia, bursitis, erectile dysfunction, lower back pain, insomnia, and chronic cystitis. (*Id.*) The ALJ found that the non-severe impairments had been "successfully treated, controlled, stabilized" or did not have more than a minimal effect on

Plaintiff's "ability to perform basic work activities." (*Id.*)

At the third step, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled" the listings impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* (citing 20 C.F.R. 404.1520(d), 404.1525 and 404.1526).) In reaching this conclusion, the ALJ determined that Plaintiff had the following restrictions due to his mental impairments: (1) mild restriction as to daily living; (2) moderate restriction as to social functioning; (3) moderate difficulties regarding maintaining concentration, persistence, or pace; and (4) no episodes of decompensation. (AR 24.)

The ALJ next considered Plaintiff's residual functional capacity ("RFC") and concluded that Plaintiff retained the RFC to perform medium exertional work, but that Plaintiff would be limited to the following: "one to two step tasks"; "low stress environment defined as only occasional decision-making and not fast paced"; and only occasional coworker and public interaction. (AR 25.)

The ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (AR 25.) The ALJ noted that "while Plaintiff's PTSD is severe, [Plaintiff] has found methods of avoiding triggers that bring on his symptoms" and he is able to manage his condition through therapy. (AR 25.) The ALJ found that Plaintiff avoids triggers to his PTSD, which include loud and unexpected noises, stressful situations, and family issues. As evidence that Plaintiff avoids such triggers, the ALJ noted Plaintiff's choice to hire a professional to teach his daughter to drive, frequent trips to Thailand, and recent marriage to a Thai woman. (AR 25-26.) The ALJ further noted that Plaintiff's progress in therapy reports indicate that he "is more relaxed, less stressed, and feels like he has more control over his life," and has a "linear and goal oriented [sic] thought process, good judgments and insight, good or stable mood, and lacks suicidal or homicidal ideation." (AR 26.)

Regarding the medical opinion evidence, the ALJ afforded medium weight to treating psychotherapist Ms. Fleming's February 2013 opinion questionnaire regarding Plaintiff's mental

4

impairments, finding that the opinion was contradicted by Ms. Fleming's treatment reports. (AR 27.) Further, the ALJ assigned little weight to a June 2015 letter in which Ms. Fleming opined that Plaintiff's condition precluded him from any employment, because the opinion fell outside of the relevant time period. (AR 27.) The ALJ gave partial weight to state agency reviewing physicians Dr. Nadine Genece and Dr. Margaret Pollack, who found that there was "no compelling evidence that the [Plaintiff's] symptoms would greatly affect his ability to hold a job, and that [Plaintiff] is capable of simple work related [sic] tasks with limited interaction." (AR 27, 76, 91.) Additionally, the ALJ gave little weight to the Department of Veterans Affairs' ("VA") 2009 opinion that Plaintiff had a 70% Service Connected Disability rating and the ALJ did not address the VA's 2011 determination that Plaintiff was unemployable due to his service-connected disabilities. (AR 27, 28, 276, 872.) Similarly, the ALJ gave little weight to the Global Assessment Functioning ("GAF") scores provided by the VA. (Dkt. No. 24.[2])

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work as a building repairer or automobile salesperson based on the vocational expert's conclusions. (AR 29.)

At step five, the ALJ concluded that Plaintiff was not disabled because he could perform other work in significant numbers in the national economy, citing janitor and "order filler picker" as representative "unskilled, medium exertional level" occupations that Plaintiff could perform. (AR 30.) The ALJ based this determination on the testimony of the vocational expert who considered Plaintiff's RFC, age, education, and work experience. (*Id*.)

**DISCUSSION**

Plaintiff raises seven issues with the ALJ decision: (1) the ALJ erred in step two by not evaluating Plaintiff's prostate cancer treatment side effects, bursitis, lower back pain and

---

[2] Plaintiff had 11 GAF scores taken between April 4, 2010 and February 27, 2013 with scores ranging from 35 to 52. (AR 28, 279, 454, 466, 473, 587, 589, 666, 686, 852.) Plaintiff's scores fall under several GAF categories of functioning: a score of 51–60 reflects "moderate difficulty" in functioning; score of 41–50 reflects "serious impairment" in functioning; and a score of 31–40 reflects "major impairment." *See Ayala-Salamat v. Berryhill*, No. 16-CV-04838-LHK, 2017 WL 2968737, at \*6 (N.D. Cal. July 12, 2017).

5

insomnia, (2) the ALJ improperly weighed the medical evidence, (3) the ALJ's credibility determination was not supported by substantial evidence, (4) the ALJ's RFC analysis was not supported by substantial evidence, (5) the ALJ erred by failing to develop the record, (6) the ALJ made unsupported lay inferences as to onset of disability, and (7) the ALJ's finding that Plaintiff could perform other work is not supported by substantial evidence and represents harmful legal error.

The Court addresses Plaintiff's first three arguments and finds that remand is required.

## I. ALJ's Evaluation of Certain Conditions as Non-Severe

### A. Legal Standard for Evaluating Severity of Impairment

At the second step the ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months. 20 C.F.R. § 416.920(c). The existence of a severe impairment is demonstrated when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, carrying; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervisors, co-workers, and usual work situations; and dealing with changes in a work setting. 20 C.F.R. § 404.1522(b). This inquiry is "a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citation omitted). An impairment is not severe only if it is a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *Id*. A "finding of no disability at step two" may be affirmed where there is a "total absence of objective evidence of severe medical impairment." *Webb*, 433 F.3d at 688.

### B. Analysis

Plaintiff challenges the ALJ finding that the following impairments were not severe: side effects of prostate cancer treatment, diabetes, tinnitus, hyperlipidemia, bursitis, erectile

6

dysfunction, lower back pain, insomnia, and chronic cystitis. (AR 23.) The ALJ found that these impairments were not severe because they had been successfully treated, controlled, stabilized or otherwise did not have more than a minimal effect on Plaintiff's ability to perform basic work activities. (AR 23.)

There is evidence to show that Plaintiff's insomnia, effects of prostate cancer treatment, lower back pain, and erectile dysfunction are impairments that have more than a minimal effect on Plaintiff's ability to work. Plaintiff's history of insomnia is supported by medical records dating back to 2009. (AR 279, 325, 328, 338, 455.) Additionally, the negative effects of Plaintiff's prostate cancer treatment are also well documented in medical records. (AR 63, 74, 286, 288.) Further, the record shows that Plaintiff has repeatedly complained of lower back pain to physicians. (AR 286, 449-469.) The record also indicates that Plaintiff had a continued concern about his erectile dysfunction as a result of his prostate cancer treatment. (AR 315, 324, 338, 445, 445.) Plaintiff's other physical impairments, which include chronic cystitis, diabetes, tinnitus, hyperlipidemia, bursitis, are also supported by the record. (AR 449-469.)

In sum, the ALJ's determination regarding Plaintiff's other impairments is not supported by substantial evidence; and therefore, at step two, the ALJ erred in failing to develop the record regarding the severity and listing levels of Plaintiff's side effects of prostate cancer treatment, diabetes, tinnitus, hyperlipidemia, bursitis, erectile dysfunction, lower back pain, insomnia, and chronic cystitis. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (finding that the ALJ has a special, independent duty to develop the record fully and fairly and to assure that the claimant's interests are considered.)

## II. The ALJ's Consideration of Medical Opinion Evidence

### A. Legal Standard

Courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examiner nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the

opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Further, "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo*, 871 F.3d at 675 (quoting 20 C.F.R. § 404.1527(c)(2)).

If a treating physician's opinion is not afforded controlling weight, the ALJ must weigh the opinion "according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *See Trevizo*, 871 F.3d at 675 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). Failure to consider the factors listed under 404.1527(c)(2)-(6) "alone constitutes reversible legal error." *Id.* at 676.

Ultimately, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Thus, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014). In conducting its review, the ALJ must consider the entire record and cannot rely only on portions of the record while ignoring conflicting evidence. *See Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (finding error where "ALJ selectively relied on some entries in [plaintiff's] records from San Francisco General Hospital and ignored the many others that indicated continued, severe impairment.").

**B.  Analysis**

Plaintiff asserts that the ALJ improperly weighed the medical evidence as to Plaintiff's treating psychotherapist Liz Fleming, the VA disability determination and finding of unemployability, Global Assessment Functions scores, and treating oncologist Dr. Amy Lin.

1.  <u>Treating Psychotherapist Liz Fleming</u>

8

1     The ALJ assigned medium weight to Ms. Fleming's February 2013 opinion questionnaire
2     regarding Plaintiff's mental impairment, and little weight to a June 2015 letter in which Ms.
3     Fleming opined that Plaintiff's condition precluded him from any employment. (AR 26-27.) In
4     the February 2013 questionnaire, Ms. Fleming opined that Plaintiff's impairments would cause 5
5     or more absences from work per month and require unscheduled breaks. (AR 687.) Further, Ms.
6     Fleming states that Plaintiff's abilities were limited in the areas of understanding, memory,
7     sustained concentration, social interaction and adaption. (AR 685-686.) Ms. Fleming also
8     concluded that Plaintiff could not hold any job due to his mental health needs. (*Id*.)

9     Ms. Fleming's June 2015 letter states that Plaintiff cannot maintain emotional stability
10    over the course of an 8-hour workday without hourly breaks, maintain weekly attendance, and
11    Plaintiff's relationship with supervisors, coworkers, and the public would be problematic. (*Id*.)
12    The ALJ gave Ms. Fleming's second opinion little weight finding that it was given over a year and
13    a half after Plaintiff's date last insured and the ALJ was required to only consider evidence
14    between Plaintiff's onset date and the date of last insured. (AR 989.) The ALJ also found that the
15    opinion was contradictory and fails to discuss the progress that the claimant has made in therapy.
16    (AR 27, 989.) An ALJ may properly consider the remoteness of a medical evaluation in weighing
17    a medical opinion. *See, e.g., Lombardo v. Schweiker*, 749 F.2d 565, 567 (9th Cir. 1984) (holding
18    that it was appropriate for the ALJ to discount an opinion rendered a year and a half after the date
19    last insured). Thus, the ALJ did not err in assigning little weight to the June 2015 opinion.

20    The ALJ justified not giving Ms. Fleming's February 2013 opinion controlling weight
21    because the opinion contradicted Ms. Fleming's reports that Plaintiff's status was positive and his
22    prognosis fair if he avoids his PTSD triggers, and because it ran counter to the progress that
23    Plaintiff had otherwise made in therapy and in his daily activities. (AR 27, 685-686.) The ALJ
24    also found contradictory a letter from Plaintiff's daughter in which she states that Plaintiff is "in a
25    better space now." (*Id*.) Lastly, the ALJ discredited Ms. Fleming's ultimate opinion that Plaintiff
26    could not work on the grounds that such a determination was a "question reserved for the
27    commissioner." (AR 27.) This latter argument is unavailing because physicians may render
28    opinions on the ultimate issue of disability—the claimant's ability to perform work. *Reddick v.*

*Chater*, 157 F.3d 715, 725 (9th Cir. 1998). While an ALJ is not bound by a treating physician's opinion as to issues reserved to the Commissioner, she cannot reject the doctor's uncontroverted opinion without providing clear and convincing reasons for doing so. *Perry v. Colvin*, 649 F. App'x 544, 545 (9th Cir. 2016) (internal quotations omitted).

As previously discussed, if a treating physician's opinion is not afforded controlling weight, the ALJ must weigh the opinion "according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *See Trevizo*, 871 F.3d at 675 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). Of these factors, the ALJ only considered the February 2013 questionnaire's consistency with the record, and even there, the ALJ selectively picked portions of the record where Ms. Fleming reported that Plaintiff's status was positive.

Ms. Fleming treated Plaintiff at least 24 times between the onset of disability to the date of last insured. (AR 330-348.) During that time, Ms. Fleming sometimes saw Plaintiff every month or more than once a month. (*Id*.) Despite the lengthy treatment history, the ALJ failed to discuss the length of the treatment relationship or frequency of examination.

Similarly, the ALJ failed to address the nature and extent of the treatment relationship, despite treatment records indicating that Plaintiff felt comfortable enough with Ms. Fleming to discuss intimate details of his life including his divorce, frustration with his ex-wife and daughter, and health concerns. (*See id*.) As for the February 2013 questionnaire's consistency with the record, the ALJ selectively picked from the record and failed to discuss how Plaintiff's mood, depression, stress, anxiety fluctuated throughout Ms. Fleming's treatment. (*See* AR 330-348.)

Although the ALJ is not required to discuss every treatment record in detail, she cannot rely on portions of a treatment record while ignoring conflicting evidence contained within the same record. *See Holohan*, 246 F.3d at 1207-08. Here, the ALJ disregards Ms. Fleming's treatment notes that present a more complicated picture of Plaintiff's disability and appear to support her February 2013 opinion; instead, the ALJ merely points to words and phrases such as "positive" and "his prognosis is fair" to contradict Ms. Fleming's February 2013 opinion. (AR 27.) However, the treatment records tell a less straightforward story, indicating at times that

Plaintiff wants to be "left alone," is "feeling more stress," and "struggl[es] with anxiety and depression issues." (AR 331, 335, 339, 342.)

The ALJ also fails to address a June 2010 letter from Ms. Fleming to the VA Regional Office in Oakland, California that supports her February 2013 opinion. In the letter Ms. Fleming opines, in relevant part:

> [Plaintiff] had to leave his job due to the stress level increasing and the demands on him to perform while going through treatment became too much for him to handle and the demands of his family [sic]. He was able to get some relief from the stress by setting boundaries and setting his pace and a much slower level but required him to stop working [sic] . . . [Plaintiff] still has nightmares, lack of restful sleep, family stress, and financial stress, episodes of depression and panic attacks. In order for him to keep a constant low level stress and mending his mental affect, there needs to be assistance to keeping him from having to be employed through compensation system within the Dept of Veteran Affairs [sic]. (AR 328.)

Ms. Fleming's June 2010 letter opines that Plaintiff's condition improved only after he stopped working. Such evidence supports her 2013 opinion questionnaire; however, the ALJ does not mention the June 2010 letter. The ALJ instead identifies evidence outside of Ms. Fleming's notes in the form of a fragment of a single sentence located in Plaintiff's daughter's June 2015 letter in which she states that Plaintiff "is in a better space now." (AR 27, 282.) When read in the context of the entire letter, however, that phrase is more nuanced; specifically, Plaintiff's daughter notes that "[t]hough my dad is in a better space now than he has been in the past, he still suffers." (AR 282.) Plaintiff's daughter notes further that "[h]e tires far more easily now and becomes withdrawn," and she "continue[s] to help [him]] with other tasks that agitate, confuse, or easy [sic] tire him." (*Id.*)

Similarly, the ALJ asserts that Ms. Fleming's February 2013 opinion regarding Plaintiff's "absenteeism and necessary breaks runs counter to the progress the claimant has made in therapy as well as his daily activities." (AR 27, 687.) However, the ALJ fails to explain in what respect the 2013 opinion runs counter to Plaintiff's progress in managing his PTSD. The ALJ does not discuss how such progress would affect absenteeism, and the ALJ does not address which daily activities contradict Ms. Fleming's February 2013 opinion that Plaintiff would need frequent

11

breaks. *See Embrey*, 849 F.2d at 421 (noting that "it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physician['s] findings."). Further, Ms. Fleming's February 2013 opinion regarding unemployability is supported by the VA's finding of unemployability and Plaintiff's disability rating of 70% for his service-connected PTSD. (AR 276-279.) Moreover, the VA examination supports Ms. Fleming's February 2013 opinion; specifically, the VA disability rating decision reported that Plaintiff "is precluded from the ability to successfully pursue, obtain, and/or retain gainful employment for VA purposes." (AR 277.)

In sum, the ALJ did not discuss the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and specialization of the physician. Moreover, in discounting Ms. Fleming's opinion because it was inconsistent with the record, the ALJ selectively picked from the record and did not address the evidence that supported Ms. Fleming's determination. Thus, in assigning medium weight to Ms. Fleming's February 2013 opinion, the ALJ failed to apply the appropriate factors as required under 20 C.F.R. § 404.1527(c)(2)-(6). *See Trevizo*, 871 F.3d at 676. Again, "[t]his failure alone constitutes reversible legal error." *Id.* Therefore, the ALJ failed to appropriately weigh Ms. Fleming's opinion.

### 2. VA's Finding of Unemployability

Plaintiff also argues that the ALJ did not afford the VA's disability rating appropriate weight. Ordinarily, an ALJ must "give great weight to a VA determination of disability," based on the "marked similarity between the [ ] two federal disability programs." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). However, the VA's disability determination is not binding on the Social Security Administration (SSA). *See* 20 C.F.R. § 404.1504. "Because the VA and SSA criteria for determining disability are not identical, . . . the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *McCartey,* 298 F.3d at 1076.[3]

---

[3] The *McCartey* court relied upon 20 C.F.R. § 404.1504. 298 F.3d at 1076. This regulation was amended on March 27, 2017, and now states that "in claims filed on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other

12

The ALJ gave little weight to the VA's 2009 opinion that Plaintiff had a 70% Service Connected Disability rating because the opinion did not specify what work-related limitations Plaintiff experienced and did not consider the methods that Plaintiff had learned to cope with his PTSD. (AR 27, 28, 872.) However, the ALJ did not consider the VA's later disability rating decision, which is dated September 23, 2011. (AR 276.) There the VA identifies the work-related limitations that result in the 70% rating given to Plaintiff in 2009.[4] The September 2011 decision also granted Plaintiff entitlement to individual unemployability effective June 3, 2010, stating, in pertinent part:

> [The August 2011] mental status examination indicated that as a result of your PTSD, you are effectively precluded from the ability to successfully pursue, obtain, and/or retain gainful employment for VA purposes. (AR 277.)

In other words, the VA found Plaintiff unemployable due to his service-connected PTSD; however, the ALJ failed to address that evidence. Thus, the ALJ's finding that the VA's 2009 disability determination should be given little weight is not only unsupported by the substantial evidence of record, it is contradicted by the VA's September 2011 rating decision. Therefore, the ALJ failed to appropriately weigh the VA's finding of unemployability.

3. Global Assessment Functioning Score

Plaintiff next alleges that the ALJ erred in affording little weight to the GAF scores provided by the VA. The ALJ assigned little weight to the scores, stating that they only represent

---

governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." However, Plaintiff's application was filed *prior* to March 27, 2017. Therefore, the new language of the regulation does not apply in this case and the Court will rely upon 20 C.F.R. § 404.1504 (2016).

[4] The September 2011 rating decision states that an evaluation of "70 percent is assigned for occupational and social impairment, with deficiencies in most areas such a work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately or effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance or hygiene; difficulty in adapting to stressful circumstances (including a worklike setting); inability to establish and maintain relationships." (AR 278.)

13

a "snapshot" of Plaintiff's symptoms on the day of examination and represent brief periods of symptom exacerbation. (AR 28.) The ALJ further noted that since the majority of the scores are from 2011 and earlier, they did not account for the beneficial effects of Plaintiff's therapy. (*Id.*) The ALJ gave "specific and legitimate reasons that are supported by substantial evidence in the record" for rejecting the GAF scores as representative of Plaintiff's capacity. *Lester,* 81 F.3d at 830–31. Other courts have agreed that GAF scores are not reliable indicators of functional capacity, finding that they are instead merely a "snapshot" in time. *Holt v. Colvin*, No. 1:13-CV-01285 - JLT, 2015 WL 1275907, at *15 (E.D. Cal. Mar. 19, 2015); *Margulis v. Colvin*, 2015 WL 1021117, *16 (E.D. Mar. 6, 2015). Plaintiff's argument is also unpersuasive because a GAF score may help guide an ALJ's determination, but an ALJ is not bound to consider it. *See McFarland v. Astrue,* 288 F. App'x. 357, 359 (2008). Thus, the ALJ was not even required to discuss Plaintiff's GAF scores, let alone assign them controlling weight in assessing the severity of Plaintiff's mental health symptoms. Therefore, any error in rejecting the GAF scores was harmless. *See Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir.2008) (discussing harmless error). Therefore, the ALJ gave specific and legitimate reasons for giving little weight to Plaintiff's GAF scores.

        4.        Treating Oncologist Dr. Amy Lin

Plaintiff further alleges that the Appeals Council erred in failing to address Dr. Lin's assessment of the effects of Plaintiff's decreased testosterone levels on Plaintiff's mental and physical health in their review of the ALJ's decision. (AR 5.) The Ninth Circuit "has specifically held that medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *Taylor v. Comm'r of Soc. Sec. Admin*, 659 F.3d 1228, 1232 (9th Cir. 2011) (quoting *Lester,* 81 F.3d at 832); *see also* 20 C.F.R. § 404.970(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only *where it relates to the period on or before the date of the administrative law judge hearing decision.*") (emphasis added); *Mancillas v. Colvin*, No. 5:13-cv-02522-PSG, 2014 U.S .Dist. LEXIS 88067, at *10-11 (N.D. Cal. June 26, 2014) (finding that Appeals Council erred by refusing to consider psychiatric evaluation and medical source statement that post-dated ALJ decision but was based on treatment rendered before the ALJ decision should be considered).

Here, Dr. Lin's opinion relates to treatment given *before* the ALJ's decision on August 27, 2015 because the opinion states that Dr. Lin has treated Plaintiff since 2013. (AR 5, 30.) Further, the treatment records show that Dr. Lin's opinion was based on multiple assessments in Plaintiff's VA record dating back to July 21, 2009. (AR 772, 879, 895, 901.)

Accordingly, the Court remands for consideration of Dr. Lin's opinion. *Taylor,* 659 F.3d at 1233 ("Where the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence.") On remand, the ALJ must account for Dr. Lin's opinion in the five-step sequential analysis.

### III. The ALJ's Credibility Determination

#### A. Standard for Assessing Credibility

To "determine whether a claimant's testimony regarding subjective pain or symptoms is credible," an ALJ must use a "two-step analysis." *Garrison*, 759 F.3d at 1014. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal citations and quotation marks omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal citations and quotation marks omitted). The clear and convincing standard is "the most demanding required in Social Security cases." *Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). "General findings are an insufficient basis to support an adverse credibility determination." *Holohan*, 246 F.3d at 1208. Rather, the ALJ "must state which pain testimony is not credible and what evidence suggests the claimant[ ][is] not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

#### B. Analysis

Applying the two-step analysis, the ALJ first found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 25.) The ALJ next determined that Plaintiff's "statements concerning the intensity, persistence

15

and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR 25.) Because Plaintiff met the first part of the test, the ALJ could reject Plaintiff's testimony regarding the severity of his symptoms only if the record contained evidence of malingering, or "by offering specific, clear and convincing reasons for doing so." *See Lingenfelter*, 504 F.3d at 1036. The ALJ failed to provide specific, clear and convincing reasons for her credibility determination.

"Improved functioning while being treated for mental health issues and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison*, 759 F.3d at 1017. Here, the ALJ supported her adverse credibility determination by noting Plaintiff's ability to manage his condition by avoiding his PTSD triggers such as unexpected noises, stressful situations, and family arguments. (AR 25.) Specifically, the ALJ points to Plaintiff avoiding fireworks, taking regular trips to Thailand, and hiring a professional to teach his daughter how to drive. (AR 25-26.) The ALJ fails to explain how Plaintiff avoiding such stressors indicates that he can effectively function in a workplace environment; in other words, none of those coping mechanisms have anything to do with Plaintiff's ability to work.

"[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017. The ALJ relied, in part, on certain therapy reports in determining that Plaintiff's symptoms have improved to the point where he is capable of work. (AR 26.) The ALJ notes that Plaintiff was previously prescribed antidepressants but no longer takes them, which indicates that he can manage his symptoms through therapy and lifestyle changes. However, the record shows that Plaintiff's mental health has varied over the course of treatment. As previously discussed, therapy reports from Ms. Fleming at times note that Plaintiff's condition is improving, but later state that Plaintiff still wants to be "left alone," is "feeling more stress," and has "anxiety and depression." (AR 328, 331, 335, 339, 342.) The ALJ's credibility determination was thus in error because she made improper inferences regarding capacity to work from Plaintiff's improved functioning in limited circumstances and isolated instances of improvement in Plaintiff's medical

16

1    record. Therefore, the ALJ did not offer specific, clear and convincing reasons for rejecting
2    Plaintiff's testimony concerning his physical and mental impairments. On remand the ALJ must
3    reassess the Plaintiff's credibility.

***

Given that the ALJ's consideration of the medical evidence and adverse credibility finding are not supported by substantial evidence, the ALJ's decision cannot stand. Because this error goes to the heart of the disability determination, it is not harmless. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.") (internal quotation marks and citations omitted); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

Plaintiff's other arguments are that the ALJ made unsupported lay inferences and improperly found that Plaintiff could perform other unskilled medium exertional positions available in the national economy. The Court need not reach either argument in light of the Court's holding that the ALJ's weighing of the medical evidence and adverse credibility finding were in error. These errors were harmful, as they directly informed the ALJ's RFC and the hypotheticals posed to the VE. *See Tommasetti*, 533 F.3d at 1038. As discussed below, this case must be remanded for further proceedings.

## IV.     Scope of Remand

Plaintiff asks the Court to remand the case for the payment of benefits or, alternatively, for further proceedings. When courts reverse an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). A remand for an award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for

17

rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (internal quotation marks and citation omitted).

The first prong of the test is not satisfied here because the record has not been fully developed. There are outstanding issues that must be resolved before a final determination can be made given that the ALJ's determination regarding Plaintiff's other impairments is not supported by substantial evidence and the ALJ failed to provide legally sufficient reasons for rejecting the medical opinion of treating psychotherapist Liz Fleming. Further, on remand the ALJ must consider the opinion of Dr. Lin and the VA's 2011 disability rating decision. Finally, the ALJ's adverse credibility determination was in error. The ALJ must conduct another analysis of severity, and present hypotheticals to the vocational expert that include new impairments that the ALJ finds to be severe. Additionally, the ALJ must reassess Plaintiff's credibility and if she again rejects his testimony regarding the severity of his symptoms, she must provide clear and convincing reasons for doing so.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order.

This order disposes of Docket Nos. 24 and 29.

**IT IS SO ORDERED.**

Dated: March 27, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge